**Dated: January 21, 2022**

**The following is ORDERED:**



Sarah A Hall
United States Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
### WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| KRYSTA NICOLE GENTRY, | ) | Case No. 20-13708-SAH |
| | ) | Chapter 7 |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| JOHN D. MASHBURN, U.S. Bankruptcy | ) | |
| Trustee of the Bankruptcy Estate of | ) | |
| Krysta Nicole Gentry, | ) | |
| Plaintiff, | ) | |
| | ) | Adv. Pro. 21-01017-SAH |
| v. | ) | |
| | ) | |
| KRYSTA NICOLE GENTRY, WILLIAM T. | ) | |
| HOLLIS, PAMELA SUE HOLLIS, and | ) | |
| DKG INVESTMENTS, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

On October 25, 2021, the following matters came on for trial in the above-captioned

adversary proceeding:

Case: 21-01017    Doc: 40    Filed: 01/21/22    Page: 2 of 34

1.    Complaint to Deny Discharge of Debtor, to Avoid Fraudulent or Preferential Transfers and for Turnover of Property and/or Funds [Doc. 1] (the "Complaint"), filed on February 5, 2021, by plaintiff John D. Mashburn, U.S. Bankruptcy Trustee ("Trustee") of the Bankruptcy Estate of Krysta Nicole Gentry ("Debtor");

2.    Defendants' Answer to Complaint to Deny Discharge of Debtor, to Avoid Fraudulent or Preferential Transfers and for Turnover of Property and/or Funds [Doc. 13] (the "Answer"), filed on March 8, 2021, by defendants Debtor, William T. Hollis ("Father") and Pamela Sue Hollis ("Mother," collectively with Father, "Parents"), and DKG Investments, LLC ("DKG"); and

3.    Final Pretrial Order [Doc. 30], entered on October 14, 2021.

Trustee appeared in person and represented himself; and Debtor appeared in person and was represented by Gary D. Hammond.  Attorney Hammond also represented Parents and DKG.

## JURISDICTION

The Court has jurisdiction to hear the trial of this matter pursuant to 28 U.S.C. § 1334(b), and venue is proper pursuant to 28 U.S.C. § 1409.  Reference to the Court of this matter is proper pursuant to 28 U.S.C. § 157(a), and this is a core proceeding as contemplated by 28 U.S.C. § 157(b)(2)(E), (H) and (J).  Additionally, the parties have consented to this Court's entry of final orders pursuant to Federal Rules of Bankruptcy Procedure 7008 and 7012.

## BACKGROUND

"Whether for carpentry or estate planning, it is usually a good idea to use the right tool for the job.  Unfortunately, when it comes to estate planning and asset transfer, people are often ill-informed about the tools available to them and the perils of choosing the wrong one.  If a parent wants to gift an asset to a child only upon the parent's death or incapacity, state law provides tools to accomplish that end.  Unfortunately, use of the wrong tool could unwittingly result in a present transfer and the unintended loss of the asset."  Soule v. Gragg (In re Harrison),

503 B.R. 835, 838-39 (Bankr. N.D. Okla. 2013).

In this case, Parents deeded their homestead to their daughters, Debtor and Sister (defined below), for no consideration in 2003 in an effort to avoid probate in the event of their death. Thereafter, Parents continued to live in the homestead through the date of trial. Due to family conflict and a desire to remove Sister from the title, Debtor and Sister deeded the property back to Parents in early 2020. Parents then immediately deeded the property to DKG, an entity solely owned by Debtor. When Trustee discovered the 2020 transfers which Debtor failed to disclose in her original Schedules and Statement of Financial Affairs, they garnered his attention as a possible fraudulent transfer. Coupled with the suspicious transfers, Debtor's Schedules and Statement of Financial Affairs contained other material errors and omissions. Nevertheless, Debtor testified at her meeting of creditors that (i) she read and signed the Schedules and Statement of Financial Affairs and (ii) the same were true and correct. Against these facts, Trustee saw red and commenced this adversary proceeding to (i) avoid the 2020 transfers as fraudulent transfers under 11 U.S.C. §§ 544, 548, and 550; (ii) for turnover under 11 U.S.C. § 542; and (iii) to deny Debtor her discharge under 11 U.S.C. § 727(a)(2) and (4).

### FINDINGS OF FACT

#### Parties

1.    Debtor[1] is the debtor in the above-captioned chapter 7 bankruptcy case (the "Bankruptcy Case"). Stipulation F. 2.

---

[1] The Court found Debtor to be a credible witness who easily followed questions and gave decisive answers. Debtor is not a meek, uninformed individual; rather, she is direct and forceful. Debtor clearly understood the gist of bankruptcy and took time to gather her necessary information, even questioning Attorney Harry (defined below) about the extent of her rights in bankruptcy in order to maximize its value to her. Debtor failed, unfortunately, to use the same care in fulfilling her obligations as a bankruptcy debtor.

Case: 21-01017　Doc: 40　Filed: 01/21/22　Page: 4 of 34

2.　Trustee is the bankruptcy trustee for Debtor's chapter 7 bankruptcy estate in the Bankruptcy Case.  Stipulation F.1.

3.　Parents are the father and mother of Debtor and are insiders of Debtor.  Stipulation F.3.

4.　Lyndsay D. Cargill f/k/a Lyndsay D. Hollis ("Sister") is the sister of Debtor.  Stipulation F.4.

5.　DKG is an Oklahoma limited liability company formed by Debtor on January 21, 2020.  Stipulation F.5.

6.　Debtor is the sole member and owner of DKG, and DKG has no business, liabilities, or assets other than its ownership interest in the Subject Property (defined below).  Stipulation F.6.

### Subject Property

7.　On September 1, 1999, Parents purchased the following real property:

> Lot One (1) in Block Five (5), PRESTON HILLS SECTION 2,
> an Addition to Oklahoma City, Oklahoma County, Oklahoma,
> according to the recorded plat thereof.
>
> Street address: 12840 Park Hill Rd, Oklahoma City, OK 73142

(the "Subject Property").  Stipulation F.10.

8.　Parents have continuously lived in the Subject Property as their home since they purchased it in 1999.  Father Testimony, Transcript, p. 54.

9.　At the time Parents purchased the Subject Property, Debtor and Sister lived with Parents as both were still in high school.  Debtor moved out of the Subject Property within a year and resided at the Subject Property one other time after she had her son and then only for one year.  Sister moved out of the Subject Property when she graduated from high school

Case: 21-01017   Doc: 40   Filed: 01/21/22   Page: 5 of 34

and never lived there again.  Father Testimony, Transcript, pp. 55-56; Debtor Testimony, Transcript, pp. 89-90.

### 2003 Parents to Sisters Deed

10.     On May 1, 2003, Parents recorded a quitclaim deed of the Subject Property (the "2003 Parents to Sisters Deed") transferring title of the Subject Property to Debtor and Sister.  Stipulation F.11.[2]

11.     The 2003 Parents to Sisters Deed was an ill-advised effort to avoid probate when Parents pass away.  Father prepared the 2003 Parents to Sisters Deed as an estate planning device and not as a gift.  Father Testimony, Transcript, p. 55.

12.     In executing the 2003 Parents to Sisters Deed, Parents had no intent to gift the Subject Property to Sister and Debtor.[3]  Father Testimony, Transcript, p. 55.

13.     Debtor was aware of the 2003 Parents to Sister Deed and understood it was for estate planning purposes and was not a gift of the Subject Property to her and Sister.  Debtor Testimony, Transcript, p. 89.

---

[2]On the same day, Debtor, Sister, and Parents executed a mortgage in favor of Larry D. Cotton to secure a loan.  Debtor Ex. 1, p. D20.  This fact adds no credence to Trustee's argument that no resulting trust arose as to the Subject Property for several reasons.  First, Debtor was either a high school student or recent graduate at the time the mortgage was executed and participated solely as a signature party and had nothing to do with the underlying loan transaction.  Second, because of the 2003 Parents to Sisters Deed, Debtor's and Sister's signatures were required in order to obtain a valid lien on the Subject Property.  Third, Parents' signatures on the mortgage, although they were no longer on the title to the Subject Property, suggests their involvement in the mortgage loan transaction.

[3]Notwithstanding rather adroit efforts by Trustee to get Father to apply legal labels to the consequences of Parents' estate planning efforts during his examination of Father, Father's testimony remained clear – the 2003 Parents to Sisters Deed was intended to provide Debtor and Sister with an ownership interest in the Subject Property **when Parents died.**  Father Testimony, Transcript, pp. 70, (lines 16-25) and 71, (lines 1-2).

Case: 21-01017    Doc: 40    Filed: 01/21/22    Page: 6 of 34

14.   Parents sought bankruptcy protection in 2005 and neither scheduled the Subject Property
      as real property they owned nor claimed the Subject Property as their exempt homestead.
      Trustee Ex. 19.

### Parents' Decline and Need for Debtor's Assistance

15.   Parents, not Debtor, primarily made any necessary repairs to the Subject Property from
      1999 to 2018.  Beginning in 2018, Debtor began providing financial support[4] to her
      parents following her Father's job loss.  Debtor also assisted Parents in making repairs.
      Father Testimony, Transcript, pp. 57-60.

16.   Parents made the mortgage payments on the Subject Property until they ceased making
      payments due to a dispute with their mortgage lender.  The mortgage was subsequently
      released in 2017 as a result of litigation over its continued validity.  Debtor Ex. 1, p. D9;
      Father Testimony, Transcript, pp. 65-66.

17.   Debtor did not pay real estate taxes or insurance on the Subject Property.  Father
      Testimony, Transcript, pp. 58-60.

18.   Debtor took deductions on her federal income tax return in 2018, 2019, and 2020, which
      were prepared by an accountant with Liberty Tax Service.  The "rental real estate,
      royalties, partnerships, S corporations, trusts, etc." deductions were taken because her
      name was on the Subject Property and were an effort to recoup some of the financial
      assistance she provided to Parents.  Debtor Testimony, Transcript, pp. 95-96.

---

[4]Debtor stated her Father helped her get a job at Mathis Brothers.  She made almost six
figures so she was able to assist Parents.  The COVID pandemic in 2020, unfortunately, brought
an end to her job and her high income. Debtor Testimony, Transcript, pp. 94, 99.

Case: 21-01017   Doc: 40   Filed: 01/21/22   Page: 7 of 34

19.     In late 2019, Parents and Debtor engaged a realtor to find a smaller house for parents. Notwithstanding making two offers, Parents have not bought a smaller house. Jason Shirazi Testimony, Transcript, pp. 74-76.

20.     In 2020, Debtor's Father approached her about additional financial support leading Debtor to discover how precarious her Parents' financial condition had become. She learned Parents had been unable to pay their real estate taxes on the Subject Property for years and were in danger of losing their home. Debtor Testimony, Transcript, pp. 94-96.

21.     Debtor found a solution for paying the delinquent real estate taxes on the Subject Property. Her mother-in-law Deborah Strawn McIntyre ("McIntyre") agreed to advance funds to pay the taxes. Debtor Testimony, Transcript, pp. 97-98.

22.     However, Debtor was unwilling to provide additional financial support, or allow McIntyre to pay the delinquent real estate taxes, if Sister remained as an owner of the Subject Property.[5] Debtor Testimony, Transcript, pp. 97-98.

### 2020 Sisters to Parents Deed

23.     Accordingly, on January 22, 2020, Debtor and Sister executed a Joint Tenancy Quitclaim Deed of the Subject Property, which was recorded in Oklahoma County on January 23, 2020, at Book RE14244, Page 1654 (the "2020 Sisters to Parents Deed"), and transferred title of the Subject Property to Parents. Stipulation F.12; Trustee Ex. 2.

---

[5]Per Debtor and Father, in late 2019, Sister's husband allegedly molested Debtor's daughter. When Debtor confronted Sister, all communication between them ceased. From that point, Debtor did not believe she could trust Sister to repay McIntyre if the Subject Property were sold and Sister remained on the title. Father had similar desires. Debtor Testimony, Transcript, pp. 97-98; Father Testimony, Transcript, pp. 63-64.

24.   Debtor received no consideration in exchange for the 2020 Sisters to Parents Deed.
      Stipulation F.13.

25.   The purpose of the 2020 Sisters to Parents Deed was twofold: remove Sister from
      ownership of the Subject Property in the event the Subject Property could be sold as it
      was Parents' sole asset while also ensuring Debtor and McIntyre were repaid for the
      expenses Debtor advanced and the delinquent real estate taxes paid by McIntrye on
      behalf of Parents.  Father Testimony, Transcript, pp. 62-63.

**2020 Parents to DKG Deed**

26.   On  January  24,  2020,  Parents executed a Quitclaim Deed of the Subject Property,
      which was recorded in Oklahoma County on January 27, 2020, at Book RE14246,
      Page 1691 ("2020 Parents to DKG Deed"), and transferred title of the Subject Property
      to DKG.  Stipulation F.14; Trustee Ex. 3.

27.   Parents had no intent to gift the Subject Property to Debtor or DKG by virtue of executing
      the 2020 Parents to DKG Deed.  Father Testimony, Transcript, p. 64.

28.   Even after the 2020 Parents to DKG Deed, Debtor never controlled the Subject Property,
      made no improvements thereto, and paid no real estate taxes thereon. Debtor Testimony,
      Transcript, p. 90.

**Debtor's Bankruptcy Case**

29.   Debtor first contemplated filing for bankruptcy relief in April 2020 due to the COVID
      pandemic.  Debtor's income was commission based, and she had a lot of debt.  Her
      family law attorney recommended attorney Stephen Harry ("Attorney Harry") as a
      bankruptcy attorney.  Debtor Testimony, Transcript, pp. 99-100.

8

Case: 21-01017   Doc: 40   Filed: 01/21/22   Page: 9 of 34

30.   In April 2020, Debtor first spoke to Attorney Harry by telephone.  Debtor Testimony,
      Transcript, p. 100.  Attorney Harry then followed up by emailing her a bankruptcy
      questionnaire to complete.  Debtor Ex. 3, pp. D216-18.  Debtor followed up with
      questions about discharging specific debts, moving money between banks, and a Home
      Depot credit card.  Debtor Ex. 3, p. D216.

31.   Debtor told Attorney Harry the Subject Property had been in her name for approximately
      20 years but had recently been transferred to DKG.  Debtor Testimony, Transcript, p. 100.

32.   Later, in August 2020, Debtor reached out to Attorney Harry about meeting.  Attorney
      Harry responded by again sending Debtor a bankruptcy questionnaire to complete prior to
      the meeting.  Debtor Ex. 3, pp. D219 and 221-22.

33.   Debtor first met with Attorney Harry in person on October 14, 2020.  Debtor Ex. 3,
      p. D223.

34.   By October 19, 2020, Attorney Harry had received the creation documents for DKG,
      including the Articles of Organization and the Certificate of Limited Liability Company.
      Debtor Ex. 3, pp. D121-27, D225, and D227.

35.   On October 22, 2020, Debtor sent bank statements to Attorney Harry.  Debtor Testimony,
      Transcript, p. 103; Debtor Ex. 3, pp. D236-62.

36.   Debtor emailed Attorney Harry on November 19, 2020, requesting he hold off on filing
      her bankruptcy case because she was filing an insurance claim.  Defendant Ex. 3,
      p. D270.

37.   On November 20, 2020, Debtor again met with Attorney Harry regarding her bankruptcy
      filing.  She did not sign anything on that day.  During this meeting, however, Attorney

9

Case: 21-01017   Doc: 40   Filed: 01/21/22   Page: 10 of 34

Harry displayed draft bankruptcy filing documents on his computer screen that he read to Debtor to check against her list of creditors.  Debtor left the meeting with a concern creditors had been missed.  Debtor Testimony, Transcript, pp. 33-34.

38.     On November 20, 2020, Attorney Harry filed Debtor's voluntary chapter 7 petition and accompanying Schedules ("Schedules"), and Statement of Financial Affairs ("SOFA") thereby commencing the Bankruptcy Case.  Stipulation F.7.

39.     Debtor never signed the petition, Schedules, or SOFA prior to their filing.  Nevertheless, Attorney Harry later provided Debtor's counsel in this adversary proceeding with copies of the petition, Schedules, and SOFA containing Debtor's "wet" signature – a signature which Debtor says is not her signature.[6]  Debtor Testimony, Transcript, pp. 34, 110-12.

40.     Debtor's Schedules failed to disclose her ownership interest in DKG.  Trustee Ex. 4.

41.     Debtor's SOFA failed to disclose (i) any income for the year in which she filed bankruptcy and the two previous years, (ii) her ownership interest in DKG, and (iii) the transfer of the Subject Property to Parents and subsequent transfer from Parents to DKG in January 2020.  Trustee Ex. 4.

42.     Debtor was not provided a copy of her petition, Schedules, or SOFA to review prior to their filing with the Court.[7]  Debtor Testimony, Transcript, pp. 33-34.

---

[6]Without being a handwriting expert, it is easy to spot the differences in Debtor's signature and the signature on the documents provided by Attorney Harry.

[7]Debtor testified Attorney Harry had the petition, Schedules, and SOFA displayed on a computer screen in his office during a meeting prior to their filing.  Debtor Testimony, Transcript, pp. 33-34.

43.     Debtor never signed the petition, Schedules, or SOFA prior to their filing.  Debtor

Testimony, Transcript, p. 34.

44.     Attorney Harry emailed Debtor a copy of the filed petition, Schedules, and SOFA on

November 23, 2020.[8]  Prior to her receipt thereof, Debtor did not know the Bankruptcy

Case had been filed.  Debtor Ex. 3, p. D278; Debtor Testimony, Transcript, p. 25.

45.     The majority of Debtor's indebtedness scheduled in the Bankruptcy Case was incurred on

or prior to January 2020.  Debtor Testimony, Transcript, pp. 14-15.

46.     Debtor's assets were valued on the petition date of the Bankruptcy Case, and also in

January 2020, at $4,250.08.  Debtor Testimony, Transcript, p. 15.

47.     Debtor's meeting of creditors pursuant to 11 U.S.C. § 341 was conducted telephonically

on December 22, 2020 (the "341 Meeting").  Bankruptcy Case Doc. 6 and entry dated

December 22, 2020.[9]

48.     During the 341 Meeting, Debtor was sworn in and responded under oath to Trustee's

questions as follows:[10]

| **Question** | **Answer** |
| --- | --- |
| Did you sign the original petition, Schedules and SOFA? | Yes |

---

[8]The petition, Schedules, and SOFA filed with the Court contain Debtor's electronic signature rather than a "wet" or original signature.  See General Order 20-7.

[9]It is well established that a court may take judicial notice of its own records as well as records of other courts, particularly in closely related cases.  Hutchinson v. Hahn, 402 F. App'x 391, 394-95 (10th Cir. 2010) (citing St. Louis Baptist Temple, Inc. v. FDIC, 605 F.2d 1169, 1172 (10th Cir. 1979)); Cornforth v. Fidelity Investments, 2017 WL 650132 (W.D. Okla. 2017).

[10]Questions are paraphrased.

11

| Did you read the petition, Schedules and SOFA? | Yes |
|---|---|
| Is the information contained in the petition, Schedules and SOFA true and correct to the best of your knowledge? | Yes |

Debtor Testimony, Transcript, pp. 18-19 (recording of 341 meeting played for the Court).

49.   On February 5, 2021, Trustee filed the Complaint commencing this adversary proceeding.

Stipulation F.8.

50.   In the Complaint, Trustee identifies the following errors and omissions from Debtor's

petition, Schedules and SOFA (Trustee Ex. 3):

| Document and question | Error or omission |
|---|---|
| Petition, p.3, Question 11 | Debtor does not rent her residence |
| Schedule A/B, Question 1 | Debtor does not own any legal or equitable interest in any residence, building, land, etc. |
| Schedule A/B, Question 3 | Debtor does not own, lease, or have legal or equitable interest in any vehicle |
| Schedule A/B, Question 19 | Debtor does not own any non-publicly traded stock and interest in incorporated or unincorporated businesses, including any interest in an LLC, partnership, or joint venture |
| Schedule I | Debtor listed no income information for her non-filing spouse. |
| Schedule J | Debtor listed no expenses other than herself or dependents. |
| SOFA, Question 4 | Debtor identified no income from employment or operating a business during the year the Bankruptcy Case was filed or the previous two years. |
| SOFA, Question 5 | Debtor said she had no other income during the previous two years. |
| SOFA, Question 9 | Debtor said she was not a party in any lawsuit, court action or administrative hearing during the year before the Bankruptcy Case was filed. |

12

SOFA, Question 18                      Debtor stated she did not sell, trade or otherwise
                                       transfer any property to anyone during the two years
                                       preceding the filing of the Bankruptcy Case.

51.    Debtor responded to such allegations as follows (Debtor Testimony, Transcript, pp.
       113-116):

| Document and question | Error or omission | Debtor Response |
|---|---|---|
| Petition, p.3, Question 11 | Debtor does not rent her residence | Debtor rents her residence and amended her Schedule A/B to so state. |
| Schedule A/B, Question 1 | Debtor does not own any legal or equitable interest in any residence, building, land, etc. | Debtor rents her residence and amended her Schedule A/B to so state. |
| Schedule A/B, Question 3 | Debtor does not own, lease, or have legal or equitable interest in any vehicle. | Debtor drives a vehicle owned by McIntyre, her mother-in-law; she neither owns nor leases it. |
| Schedule A/B, Question 19 | Debtor does not own any non-publicly traded stock and interest in incorporated or unincorporated businesses, including any interest in an LLC, partnership, or joint venture | Debtor amended her Schedule A/B to disclose her ownership interest in DKG. |
| Schedule I | Debtor lists no income information for her non-filing spouse. | Debtor was married but not living with her husband when she filed bankruptcy. |
| Schedule J | Debtor listed no expenses other than herself or dependents. | Debtor states that Schedule J is accurate. |
| SOFA, Question 4 | Debtor identified no income from employment or operating a business during the year the Bankruptcy Case was filed or the previous two years. | Debtor amended her SOFA to reflect her income in 2018, 2019, and 2020. Trustee Ex. 20, p. 38. |
| SOFA, Question 5 | Debtor said she had no other income during the previous two years. | Debtor amended her SOFA to reflect her income in 2018, 2019, and 2020. Trustee Ex. 20, p. 38. |

13

| | | |
|---|---|---|
| SOFA, Question 9 | Debtor said she was not a party in any lawsuit, court action or administrative hearing during the year before the Bankruptcy Case was filed. | Debtor amended her SOFA to reflect lawsuits to which she was a party during the year before her Bankruptcy Case was filed. Trustee Ex. 20, pp. 39-40. |
| SOFA, Question 18 | Debtor stated she did not sell, trade or otherwise transfer any property to anyone during the two years preceding the filing of the Bankruptcy Case. | Debtor amended her SOFA to reflect her transfers. |

52.    On February 9, 2021, after this adversary proceeding was filed, DKG recorded a

Quit Claim Deed of the Subject Property to Debtor's mother-in-law, McIntyre, with the

Oklahoma County Clerk ("McIntyre Deed").  McIntyre subsequently deeded the Subject

Property back to DKG to avoid being added as a party defendant herein.  Stipulation F.15.

53.    The purpose of the McIntyre Deed was to ensure McIntyre was repaid for her payment of

Parents' delinquent real estate taxes on the Subject Property.  Father Testimony,

Transcript, pp. 63-64, 72-73.

54.    On June 28, 2021, Debtor filed her Amended Petition, Schedule A/B, Schedule C,

Schedule E/F, Schedule G, Summary of Schedules (collectively, the "Amended

Schedules"), Statement of Financial Affairs (the "Amended SOFA"), Statement of

Intention, and Verification of Creditor Matrix.  Stipulation F.9; Trustee Ex. 20.  The

Amended SOFA disclosed Debtor's income for 2020 (to date), 2019, and 2018, and her

interest in DKG.  Trustee Ex. 20.

### CONCLUSIONS OF LAW

Trustee seeks to avoid the 2020 transfers as fraudulent transfers under Sections 544, 548,

and 550, or alternatively for turnover under Section 542, and to deny Debtor her discharge under

Section 727(a)(2) and (4).  For the reasons below, Debtor's discharge will be denied for

14

knowingly and fraudulently making a false oath related to a material fact. However, Trustee's requests for avoidance and turnover will be denied as the Subject Property is not property of the estate. Finally, Trustee's request to deny Debtor's discharge for transferring property with the intent to hinder, delay, or defraud her creditors will also be denied.

## I.  DEBTOR'S DISCHARGE IS DENIED PURSUANT TO SECTION 727(a)(4).

In order to deny a debtor's discharge pursuant to Section 727(a)(4)(A), Trustee must demonstrate by a preponderance of the evidence that Debtor knowingly and fraudulently made a false oath relating to a material fact. United States Trustee v. Garland (In re Garland), 417 B.R. 805, 814 (10th Cir. BAP 2009) (citing Gullickson v. Brown (In re Brown), 108 F.3d 1290, 1294 (10th Cir. 1997)). A false oath may be either (i) a false statement or omission in the schedules or statement of financial affairs or (ii) a false statement by the debtor at an examination during the bankruptcy case. Garland, 417 B.R. at 814; Woolman v. Wallace (In re Wallace), 289 B.R. 428, 434 (Bankr. N.D. Okla. 2003). Further, "[t]he subject matter of a false oath is 'material,' and thus sufficient to bar discharge, if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." Garland, 417 B.R. at 814 (citing Chalik v. Moorefield (In re Chalik), 748 F.2d 616, 618 (11th Cir. 1984)); First Nat'l Bank, Larned v. Davison (In re Davison), 2004 WL 2852352, at *3 (10th Cir. BAP June 29, 2004). "Albeit harsh, the primary purpose of a 'false oath' discharge exception is to 'ensure that dependable information is supplied for those interested in the administration of the bankruptcy estate . . . without the need for the trustee or other interested parties to dig out the true facts in examinations or investigations.'" Layng v. Sgambati (In re

15

Case: 21-01017   Doc: 40   Filed: 01/21/22   Page: 16 of 34

Sgambati), 584 B.R. 865, 871 (Bankr. E.D. Wis. 2018) (citing Caldwell-Powell Constr., LLC v.

Powell (In re Powell), 580 B.R. 822, 836 (Bankr. E.D. Ark. 2018)).

Two alleged false oaths are before the Court. First, Debtor omitted her interest in DKG,

her employment income for the year in which bankruptcy was filed and the two previous years,

and the transfer of the Subject Property from her Schedules and SOFA. Second, Debtor testified

at the 341 Meeting that (i) she signed the original petition, Schedules, and SOFA, (ii) she read

the original petition, Schedules, and SOFA, and (iii) the information contained in the original

petition, Schedules, and SOFA was true and correct to the best of her knowledge. Each alleged

false oath must be separately analyzed.

### A.     The Omissions from the Schedules, and SOFA, while False, are not False Oaths.

Debtor's omission of Debtor's interest in DKG, her employment income for the year in

which bankruptcy was filed and the two previous years, and the transfer of the Subject Property

from her Schedules and SOFA render the same false and undoubtedly material. However, at

trial, the evidence established Debtor did not sign the Schedules and SOFA prior to Attorney

Harry filing them. While a set of her Schedules and SOFA with what purports to be Debtor's

wet signature was admitted, Debtor testified during trial she never signed the petition, Schedules,

or SOFA prepared by Attorney Harry because COVID measures eliminated the need for a wet

signature.[11] Further, a simple comparison of the wet signature against Debtor's original signature

of the Amended Schedules and Amended SOFA reveals they differ, corroborating Debtor's

---

[11]General Order 20-7 requires attorneys to obtain **either** a digital signature, written authorization to affix the signature, or an imaged or faxed signature attached to the entire document. The Court received no evidence Attorney Harry had any of these from Debtor.

Case: 21-01017   Doc: 40   Filed: 01/21/22   Page: 17 of 34

testimony.  Additionally, no evidence that Debtor authorized Attorney Harry to affix her

signature to the Schedules and SOFA prior to filing is in the record.  Since Debtor did not sign

the Schedules and SOFA under oath or penalty of perjury, or otherwise authorize her signature to

be affixed by Attorney Harry, Debtor is not subject to denial of her discharge under Section

727(a)(4).  See, e.g., Looney v. Owens (In re Owens), 2006 WL 6589904, at *5 n.1 (Bankr. N.D.

Ga. Feb. 3, 2006) (citing Custom Cushions v. Kunec (In re Kunec), 27 B.R. 650, 652 (Bankr. D.

Penn. 1982)).

     As Debtor did not sign the petition, Schedules, and SOFA under oath, the omissions

therefrom cannot be false oaths for purposes of Section 727(a)(4).

     **B.**    **Debtor's Testimony at the 341 Meeting is a False Oath.**

     At her 341 Meeting, Debtor testified (i) she signed the petition, Schedules, and SOFA,

(ii) she read the petition, Schedules, and SOFA, and (iii) the information contained in the

petition, Schedules, and SOFA was true and correct to the best of her knowledge.  Nevertheless,

at trial, Debtor unequivocally testified she did not review or sign the petition, Schedules, or

SOFA prior to their filing (and, thus, had no way of knowing if the petition, Schedules, and

SOFA were true and correct as filed).  As a result, Debtor made critical false oaths at her 341

Meeting relating to the credibility of information contained in her petition, Schedules, and

SOFA.

     The Court considers the false statements regarding her petition, Schedules, and SOFA to

be material.  The oaths made at the 341 Meeting are fundamental to the bankruptcy process:

> A debtor has 'a paramount duty to carefully consider all questions
> included in the Schedules and Statement [of Financial Affairs] and
> see that each is answered accurately and completely.'  In re Colvin,

17

Case: 21-01017   Doc: 40   Filed: 01/21/22   Page: 18 of 34

> 288 B.R. 477, 480 (Bankr. E.D. Mich. 2003) (quoting Casey v. Kasal (In re Kasal), 217 B.R. 727, 734 (Bankr. E.D. Pa. 1998), aff'd, 223 B.R. 879 (E.D. Pa. 1998)) . . . **A 'debtor's failure to read the schedules before signing them indicates a complete disregard for the duty of honesty imposed by the Bankruptcy Code.'** In re Lundy, 216 B.R. 609, 611 (Bankr. E.D. Mich. 1998).

Church Joint Venture, L.P. v. Blasingame (In re Blasingame), 559 B.R. 692, 699 (6th Cir. BAP 2016) (citing In re Rice, 452 B.R. 623, 626 (Bankr. E.D. Mich. 2011), aff'd 478 B.R. 275 (E.D. Mich. 2012). Materiality is present given the importance of Debtor's full and accurate disclosure to the proper and efficient functioning of the bankruptcy process. As the 10th Circuit Bankruptcy Appellate Panel stated:

> We cannot overemphasize the importance to the bankruptcy system of full and honest disclosure of information by the parties seeking its protections. A Chapter 7 proceeding is not, nor should be, an arena in which players engage in obfuscation of facts in order to obtain an outcome not sanctioned by the Bankruptcy Code. Instead, a bankruptcy liquidation should be conducted as a joint effort to obtain both a fresh start for the debtor and the best possible return for its creditors, all within an environment of relative calm, overseen by the dispassionate but watchful eyes of a Chapter 7 Trustee and ultimately ruled on by the bankruptcy judge.

Garland, 417 B.R. at 815. "[T]hose who seek shelter of the [B]ankruptcy [C]ode must provide 'complete, truthful and reliable information.'" Job v. Calder (In re Calder), 907 F.2d 953, 956 (10th Cir. 1990). Debtor did not.

Materiality being present, the Court must determine Debtor's intent in making the false oaths at the 341 Meeting. Section 727(a)(4) requires the false oath to be made knowingly and fraudulently. Knowing and fraudulent intent may be inferred from the facts and circumstances of a case. Davison, 2004 WL 2852352, at *3 (first citing Calder, 907 F.2d at 956; and then citing Sholdra v. Chilmark Financial LLP (In re Sholdra), 249 F.3d 380, 382 (5th Cir. 2001)).

18

Case: 21-01017   Doc: 40   Filed: 01/21/22   Page: 19 of 34

The Court finds Debtor knowingly made the false oaths at the 341 Meeting as she knew she neither reviewed nor signed the petition, Schedules, and SOFA prior to their filing by Attorney Harry. Because she did not review them prior to filing, Debtor could not verify their accuracy. By the time of the 341 meeting, Debtor had the filed-stamped petition, Schedules, and SOFA in her possession, having received them from Attorney Harry on November 23, 2020, almost one full month prior to her 341 Meeting. After Debtor received the filed petition, Schedules, and SOFA, she emailed Attorney Harry several times to verify scheduled creditors and to add additional creditors. Based on her conduct, it is evident Debtor reviewed the filed petition, Schedules, and SOFA upon receipt and recognized, at a minimum, the omission of creditors therefrom as a deficiency and sought correction, through Attorney Harry, in order to protect the extent of her discharge. Given the opportunity to correct the record at the 341 Meeting, however, Debtor declined to do so. Instead, she elected to testify falsely about reading, reviewing, and signing the petition, Schedules, and SOFA prior to filing and vouched for the accuracy thereof.

The next question is whether Debtor testified fraudulently at the 341 Meeting. Proving a debtor acted with fraudulent intent is difficult because, ordinarily, the debtor will be the only person able to testify directly concerning her intent and is usually unlikely to state her intent in acting or failing to act was fraudulent. Garland, 417 B.R. at 815; Holley Performance Prods., Inc. v. Coppaken (In re Coppaken), 572 B.R. 284, 323 (Bankr. D. Kan. 2017). However, a debtor's intent may be established through showing the debtor made a statement with reckless indifference to the truth. Davison, 2004 WL 2852352, at *3. "It is not necessary to show that the debtor acted deliberately to deceive the trustee and the creditors; rather, the requisite fraudulent

intent can be shown by establishing that the debtor acted with reckless disregard for the truth."
The Shack, LLC v. Hickman (In re Hickman), 616 B.R. 815, 823 (Bankr. W.D. Okla. 2020),
appeal dismissed sub nom. Hickman v. Shack, LLC, No. AP 19-01042, 2020 WL 5049206
(W.D. Okla. Aug. 21, 2020). Reckless indifference to the truth means not caring whether a
representation is true or false. Rupp v. Biorge (In re Biorge), 536 B.R. 24, 31 (Bankr. D. Utah
2015) (citing Freelife Int'l, LLC v. Butler (In re Butler), 377 B.R. 895, 922–23 (Bankr. D. Utah
2006)). See also Hickman, 616 B.R. at 822 (first citing Lashinsky v. Webb (In re Webb), 2019
WL 2895000, at *6-7 (Bankr. N.D. Okla. July 2, 2019); then citing In re Chavin, 150 F.3d 726,
728 (7th Cir. 1998); and then citing Lowry v. Croft (In re Croft), 500 B.R. 823, 858 (Bankr. W.D.
Tex. 2013)).

By the 341 meeting, Debtor knew she had not reviewed and signed the petition,
Schedules, and SOFA prior to their filing. Additionally, Debtor knew either the Schedules and
SOFA contained inaccuracies and omissions or she was recklessly indifferent to that fact due to
her failure to closely examine the filed Schedules and SOFA once she received them from
Attorney Harry. Either way, she knew her answers to Trustee's questions at the 341 Meeting
were false – she had not reviewed or signed the petition, Schedules, and SOFA before they were
filed and did not know if they were accurate, complete, or identified all assets and creditors. By
not admitting her failure to review, read, and sign the petition, Schedules, and SOFA prior to
their filing, Debtor effectively continued the misrepresentations contained therein respecting her
ownership of DKG, the gratuitous transfer of the Subject Property to her Parents, and her

Case: 21-01017   Doc: 40   Filed: 01/21/22   Page: 21 of 34

income.[12]  She made the deliberate choice to withhold information from Trustee and creditors

and to not correct the record in flagrant disregard of her obligation of full and accurate

disclosure.  Garland, 417 B.R. at 818.  The evidence illustrates this deliberate choice was not

simply a mistake.  Trustee established, at the very least, Debtor acted with a reckless disregard

for the truth, which is enough to satisfy the "knowingly and fraudulently" prong of Section

727(a)(4)(A).

"[T]he purpose of § 727(a)(4)(A) is to prevent costly investigations by the trustee and

creditors by ensuring that they are provided with accurate information."  Myka Ventures, Inc. v.

Christian (In re Christian), 615 B.R. 240, 248 (Bankr. M.D. Tenn. 2020) (citing U.S. Trustee v.

Zhang (In re Zhang), 463 B.R. 66, 86 (Bankr. S.D. Ohio 2012)).  The duty of complete and

accurate disclosure is a continuing duty on debtors – it includes the duty to correct the record

before the Court, trustee, and creditors, and the failure to correct the record after becoming

aware of inaccuracies is evidence of a debtor's reckless indifference to the truth.  Grassmann

v. Brown (In re Brown), 570 B.R. 98, 116 (Bankr. W.D. Okla. 2017).  Debtor never corrected

her false statements at the 341 Meeting.  As a result of Debtor's silence, Trustee, upon

discovering the omissions, filed this adversary proceeding to recover the Subject Property and

to deny Debtor her discharge in February 2021 with an understandable dose of scepticism[13] as to

---

[12]A debtor has an uncompromising duty to disclose whatever ownership interests are held in property.  Garland, 417 B.R. at 815 (citing Morrel, West & Saffa, Inc. v. Riley (In re Riley), 128 B.R. 567, 570 (Bankr. N.D. Okla. 1991).

[13]Had Debtor testified she had not reviewed her petition, Schedules, and SOFA prior to their filing, or had not signed them, or did not know if they were true and correct because she had not reviewed them prior to filing, there may never have been cause for Trustee to "discover" the omissions and subsequently conclude Debtor was possibly attempting to hide or otherwise coverup valuable property of, and the transfer of some of such property from, the bankruptcy estate.

anything Debtor claimed.  But even then, Debtor did not immediately correct the record,[14] taking

until almost July 2021.

Debtor cannot claim she relied upon the advice of counsel with regard to the false oaths

made in her 341 Meeting that she read and signed her petition, Schedules, and SOFA and they

were true and correct.  There was no evidence Attorney Harry advised Debtor to testify falsely at

the 341 Meeting.  And, if he did, "reliance upon it would not be reasonable. The importance of

having read and being familiar with the information in the petition, [S]chedules, and S[O]FA

should have been abundantly clear to Debtor[] given" she was asked under oath if she had done

so.  Blasingame, 559 B.R. at 698.  "[I]t is Debtor's duty to make complete and accurate

disclosures on [her] petition, [S]chedules and [SOFA] . . . Debtor's reliance on attorney error as

a basis to mitigate intent . . . is misplaced because there is no evidence that . . . Debtor complied

with [her] duty to review [her] schedules and statements to ensure they were complete and

accurate."  Doeling v. Berger (In re Berger), 497 B.R. 47, 56 (Bankr. D. N.D. 2013).  Debtor

reviewed her Schedules and SOFA post-filing but elected to remain silent as to the obvious

errors and omissions in reckless disregard of her fundamental obligations to the Court, Trustee,

and creditors to make full and accurate disclosure.  Such conduct is a detriment to the effective

operation of the bankruptcy system.

Consequently, the Court concludes Debtor not only acted knowingly but also fraudulently

in making false oaths at the 341 Meeting.  For the reasons set forth above, Debtor's discharge is

denied under Section 727(a)(4).

---

[14]The fact Debtor elected to delay a formal correction of her Schedules and SOFA until
six months after her 341 Meeting where she made a false oath, and four months after Trustee
commenced this adversary proceeding, is "evidence to this Court that Debtor[] chose to engage
in fraud, and [was] not merely mistaken."  Coppaken, 572 B.R. at 324.

## II.    THE 2020 SISTERS TO PARENTS DEED IS NOT A FRAUDULENT TRANSFER.

"'For purposes of most bankruptcy proceedings, property interests are created and defined

by state law.  Once the state law determination is made, however, we must still look to federal

bankruptcy law to resolve the extent to which that interest is property of the estate' under § 541."

Parks v. Dittmar (In re Dittmar), 618 F.3d 1199, 1204 (10th Cir. 2010) (citing Parks v. FIA Card

Servs., N.A., 550 F.3d 1251, 1255 (10th Cir. 2008) (citations and quotations omitted)); 11 U.S.C.

§ 541(a)(1).  The bankruptcy estate includes all legal and equitable interests of the debtor in

property as of the commencement of the case.  11 U.S.C. § 541(a).  However, notwithstanding

the broad scope of Section 541(a), certain property is excluded from the bankruptcy estate

including property in which a debtor holds, as of the petition date, only legal title and not an

equitable interest.  11 U.S.C. § 541(d).  As a result, while Section 541(a)(1) includes all of a

debtor's legal or equitable interests as property of the estate, Section 541(d) operates to exclude

those equitable interests for which a debtor holds only bare legal title.  Mashburn v. Arzate

(In re Arzate), 618 B.R. 535, 541 (Bankr. W.D. Okla. 2020).

### A.    The Subject Property is in a Resulting Trust in Favor of Parents.

Sometimes, the face of a deed does not accurately reflect what the parties intended to

**convey.  For those situations, the law allows the parties to present evidence to show they**

**intended a different transaction than what appears on the face of the documents. As**

**between the parties, the intention of the parties usually prevails."**  Harrison, 503 at 841-42.

Under Oklahoma law, when a transfer of real property is made to one person, and the

consideration therefor is paid by or for another, a trust is presumed to result in favor of the person

by or for whom such payment is made.  Okla. Stat. Ann. tit. 60, § 137 (2010).  See Goddard v.

23

Heldt (In re Heldt), 528 F. App'x 779, 781 (10th Cir. 2013) (citing 60 Okla. Stat. § 137).  A
so-called "resulting trust" will arise where property is transferred "but the intent appears or is
inferred from the terms of the disposition, or from accompanying facts and circumstances, that
the beneficial interest is not to go to or be enjoyed with the legal title.  In such a case, a trust is
implied or results in favor of the person for whom the equitable interest is assumed to have been
intended, and whom equity deems to be the real owner." Arzate, 618 B.R. at 541-42 (first citing
Cacy v. Cacy, 619 P.2d 200, 202 (Okla. 1980); then citing Wadsworth v. Courtney, 393 P.2d 530
(Okla. 1964); then citing Barry v. Frizzell, 371 P.2d 460 (Okla. 1962); then citing In re
Commercial Financial Services, Inc., 268 B.R. 579, 606 (Bankr. N.D. Okla. 2001); and then
citing Naylor Farms, Inc. v. Anadarko OGC Company, 2011 WL 7267853 *1 (W.D. Okla.
2011)).

Proving a resulting trust is difficult in that the evidence required must be "clear,
unequivocal and decisive beyond a reasonable doubt." Cacy, 619 P.2d at 202.  Regardless, "a
resulting trust may be proved by testimony in the same manner as any other disputed question."
Copenhaver v. Copenhaver, 317 P.2d 756, 760 (Okla. 1957).  "The primary factual issue to be
established is the payment of the consideration for the property, title to which has been taken in
another." Copenhaver, 317 P.2d at 760.  Additionally, a resulting trust requires an intent by the
transferor to retain a beneficial interest. Arzate, 618 B.R. at 542.  Courts look at a number of
factors to determine whether the parties intended a beneficial interest be conveyed including:
"did the grantor relinquish possession; did the grantor pay the taxes or encumbrances; did the
grantee take possession or exercise dominion over the land as owner; did the grantor make
improvements on the property." Arzate, 618 B.R. at 542 (first citing United States v. Tingey,
716 F.3d 1295 (10th Cir. 2013); and then citing In re Keenan, 364 B.R. 786 (Bankr. D. N.M.

2007)).  The proof to establish a resulting trust must "be of the most satisfactory kind; and, the burden of establishing such a trust rests upon him who seeks its enforcement."  Copenhaver, 317 P.2d at 757.

Here, the evidence conclusively establishes Parents paid for the Subject Property and intended to retain a beneficial interest that was not to be enjoyed by Debtor.  Debtor and Father testified Parents never had the intent to give Debtor (or Sister) a beneficial interest in the Subject Property when the 2003 Parents to Sisters Deed was executed and recorded.  Consistent therewith, the record before the Court is replete with facts indicating, under Oklahoma law, a resulting trust arose in favor of Parents with respect to the Subject Property.  Parents made the mortgage payments on the Subject Property until they defaulted, and the mortgage was subsequently released without any payment by Debtor.  Similarly, Debtor paid no funds towards the purchase price of the Subject Property. Debtor also did not pay the taxes on the Subject Property although she did arrange for McIntyre to loan funds for back-taxes to be paid in 2020. Parents alone lived openly in the Subject Property for in excess of twenty (20) years and paid for the expenses associated with owning and maintaining the Subject Property.  In contrast, Debtor never paid anything for the Subject Property from the purchase price to daily maintenance expenses until 2018 when Parents' declining health and job loss required her to become involved.  According to uncontradicted testimony, Parents placed title to the Subject Property in Debtor's and Sister's names only as an estate planning device designed to avoid probate.  The intent of Parents and Debtor is clear – Parents effectively "parked" the Subject Property with Debtor and Sister for estate planning purposes.[15]

---

[15]Trustee attempts to raise doubt about the propriety of imposing a resulting trust on the Subject Property because Debtor took deductions on her 2018 and 2019 income tax returns.

(continued...)

Case: 21-01017   Doc: 40   Filed: 01/21/22   Page: 26 of 34

The 2020 transfers (from Debtor and Sister to Parents, and Parents to DKG) change nothing. Such transfers were designed to protect Parents' only sizeable asset while allowing them to obtain the assistance, financial and otherwise, from Debtor with the help of McIntyre. Parents alone continued to reside in the Subject Property as their home. The 2020 transfers from Parents to DKG had no effect on Parents' exclusive control, occupancy, and use of the Subject Property, all of which continued uninterrupted notwithstanding the transfers. Neither Debtor nor DKG controlled, occupied, or used the Subject Property. Such transfers were simply designed to remove Sister from the title and make it easier for Debtor to assist in selling the Subject Property and pay McIntyre from the sale proceeds. Nothing changed except the record owner.

The Court finds Debtor and Father to be credible witnesses. Moreover, their testimony was supported by the documentary evidence and was uncontradicted by Trustee. The Court finds Parents never manifested an intent for Debtor to acquire a beneficial interest in the Subject Property at the time of the transfer of the Subject Property in 2003 or thereafter. Accordingly, the Subject Property was, and remains, subject to a resulting trust in favor of Parents under Oklahoma law.

### B.    Parents did not Gift the Subject Property to Debtor.

Trustee argues an exception to the rule imposing a resulting trust where a parent pays the consideration for the conveyance of real estate to a child, which gives rise to a rebuttable presumption of a gift rather than a resulting trust. See Boatright v. Perkins, 894 P.2d 1091, 1094 (Okla. 1995). See also Arzate, 618 B.R. at 542. As was the case in Arzate, the evidence before

---

[15](...continued)
Debtor explained the rationale for taking such deductions – her accountant suggested she take the deductions in an effort to recoup a portion of the financial assistance she was provided to Parents at that time. Transcript, p. 96, (lines 4-14).

the Court more than rebuts the presumption Parents intended to gift the Subject Property to Debtor and Sister. Parents' possession and control over the Subject Property was absolute and unfettered, and their intent clear and uncontradicted. While Debtor eventually became involved with the maintenance and tax payments, Parents exclusively remained in possession and otherwise enjoyed the sole benefits of ownership and, until 2018, bore the full financial and other burdens of owning the Subject Property. Arzate, 618 B.R. at 542 (citing Taylor v. Rupp, 133 F.3d 1336, 1342 (10th Cir. 1998)). Similarly, when Parents transferred the Subject Property to DKG in 2020, there was no intent to gift the property to DKG. Such transfer was simply furthering Parents' original intent to avoid probate by transferring the Subject Property to Debtor and Sister while addressing concerns Parents had over Sister remaining on the title and their growing need for financial and other assistance from Debtor.

In this Court's opinion, the evidence is clear and unequivocal – Parents transferred the Subject Property to Debtor and Sister for the sole purpose, however misguided, of avoiding probate. They had no intent to gift or otherwise transfer ownership and control of the Subject Property to Debtor. The reasons given justifying imposition of a resulting trust, i.e. the evidence of Parents' plain intent not to transfer a beneficial interest in the Subject Property to Debtor, are "not only sufficient to rebut the presumption of a gift to [] Debtor but [are] so 'strong, clear, and convincing, such as to leave no doubt of the existence of the trust.'" Arzate, 618 B.R. at 542 (citing Taylor, 133 F.3d at 1342).

### C. Due to the Resulting Trust, the Subject Property is not Property of the Estate.

"Property that is subject to a constructive or resulting trust is not property of the bankruptcy estate." Arzate, 618 B.R. at 541 (citing Halverson v. Halverson (In re Halverson), 151 B.R. 358, 362 (M.D. N.C. 1993)); Mitsui Mfrs. Bank v. Unicom Comput. Corp. (In re

Case: 21-01017   Doc: 40   Filed: 01/21/22   Page: 28 of 34

Unicom Comput. Corp.), 13 F.3d 321, 324 (9th Cir. 1994); Berger, Shapiro & Davis v. Haeling

(In re Foos), 183 B.R. 149, 156 (Bankr. N.D. Ill. 1995) (quoting N.S. Garrott & Sons v. Union

Planters Nat'l Bank of Memphis (In re N.S. Garrott & Sons), 772 F.2d 462, 466 (8th Cir. 1985)).

Having concluded the Subject Property was and is the subject of a resulting trust in favor of

Parents, Debtor held only legal title thereto in 2020 when the 2020 Sisters to Parents Deed was

executed and recorded.  Consequently, the Subject Property is not property of Debtor's

bankruptcy estate.

### D.       Parents' Possession and Occupancy of the Subject Property Keeps Trustee from being a BFP.

No resulting trust can prejudice the rights of a bona fide purchaser for value without

notice of the trust.  Mehard v. Little, 1921 OK 76, 196 P. 536, 541 (1921).  See also Patterson v.

McKeehen, 1934 OK 296, 32 P.2d 875 (1934) (no resulting trust can prejudice the rights of a

bona fide purchaser for value without notice); Payne v. Allen, 1936 OK 782, 62 P.2d 1227

(1936) (when a person is a bona fide purchaser in good faith and without notice that the grantor

is a trustee, a deed of conveyance by such trustee to such innocent purchaser is valid and

binding).  Oklahoma imposes on a purchaser of real property the duty to inquire with reasonable

diligence as to the rights of anyone, other than the record owner, in possession of such property.

The duty imposed is to make a diligent inquiry as distinguished from acquiring the correct

information.  Burgess v. Indep. School Dist. No. 1, 1959 OK 37, 336 P.2d 1077, 1081 (1959)

(citing Okla. Stat. tit. 25, §§ 11, 12 and 13).

While the law is clear that a bona fide purchaser (i.e. Trustee's posture in this case) can

defeat a resulting trust, such is only true assuming there is no notice.  However, Parents have

lived in the Subject Property for in excess of twenty (20) years.  Possession of real property other

than by the holder of title thereto puts all parties, **including a bona fide purchaser**, on inquiry

notice as to Parents' claim to the Subject Property.  Heldt, 528 F. App'x at 781.  Inquiry would have revealed first Debtor and Sister, and then DKG, owned the Subject Property in name only, subject to the resulting trust in favor of Parents.

Such notice defeats Trustee's rights as a bona fide purchaser with respect to the Subject Property.

**E.    The 2020 Sisters Deed to Parents Conveyed Nothing of Value.**

The critical issue here is whether the Subject Property would have been property of the bankruptcy estate if (i) Debtor (and Sister) had not transferred the Subject Property to Parents by virtue of the 2020 Sisters to Parents Deed and (ii) Parents had not transferred the Subject Property to DKG by virtue of the 2020 Parents to DKG Deed.  For the reasons set forth above, the Court concludes the Subject Property would not have been property of the bankruptcy estate even if the 2020 transfers had not occurred.   In early January 2020, Debtor held only bare legal title to the Subject Property.  Where a debtor holds only bare legal title to property, the value of that interest in the property is essentially zero.  Tolz v. Miller (In re Todd), 391 B.R. 504, 509 (Bankr. S.D. Fla. 2008).  "A **valueless** asset transferred for no consideration neither hurts nor benefits the estate." Todd, 391 B.R. at 509 (citing Kapila v. Moodie (In re Moodie), 362 B.R. 554, 562 (Bankr. S.D. Fla. 2007)).

Accordingly, Trustee's claim under Section 548 based on a debtor's transfer of title without receiving reasonably equivalent value in exchange therefor is without merit because the beneficial interest in the property transferred was never with Debtor and could not be an asset of her bankruptcy estate.  Drown v. Hill (In re Phillips), 437 B.R. 836, 843-44 (Bankr. S.D. Ohio 2010).  A bankruptcy estate cannot be diminished by a transfer of pure legal title held by a debtor to the holder of equitable title to the property under a resulting trust as the ownership interest in

29

the property was never available to any creditor of the debtor.  Phillips, 437 B.R. at 844 (citing In re Ward, 300 B.R. 692 (Bankr. S.D. Ohio 2003)).

"An interest in property consisting of bare legal title holds no tangible economic value. Thus, the transfer of bare legal title does not constitute a fraudulent transfer."  Rodriguez v. Nelabovige (In re Kirst), 559 B.R. 757, 763 (Bankr. D. Colo. 2016) (first citing Davis v. Pham (In re Nguyen) 783 F.3d 769, 776 (10th Cir. 2015) (affirming bankruptcy court's ruling that "bare legal title is not an interest that may be avoided under 11 U.S.C. § 548(a)(1)(B)"); then citing Goddard v. Heldt (In re Heldt), 528 F. App'x 779, 781 (10th Cir. 2013) (Mother's gift to daughter was an estate planning device, not a gift, so daughter held only bare legal title) (unpublished opinion)); and then citing Geremia v. Dwyer (In re Dwyer), 250 B.R. 472, 474 (Bankr. D. R.I. 2000) ("When a debtor holds only bare legal title, and not equitable title to property, only the legal title becomes part of the debtor's bankruptcy estate")); Cox v. Penney (In re Penney), 632 B.R. 181, 191-92 (Bankr. E.D. Ark. 2021).  If no value is lost in a transfer between a debtor and a transferee, "it is inherently the case that the [d]ebtor did not receive less than equivalent value."  Todd, 391 B.R. at 509.

Based on these and other similar facts, the Court concludes Debtor held only bare legal title to the Subject Property with a resulting trust in favor of (and therefore equitable title in) Parents.  Because Debtor held only bare legal title to the Subject Property, her bare legal interest in the Subject Property was essentially valueless.  As a result, Debtor also did not receive less than equivalent value when she received nothing in exchange for the 2020 Sisters to Parents Deed.[16]

---

[16]There is no evidence of actual intent or constructive intent to hinder, delay or defraud Debtor's creditors by the transfer of the Subject Property.  The transfer of the Subject Property

(continued...)

Accordingly, the Court finds that judgment should be entered in favor of Debtor and

Parents and against Trustee on his fraudulent transfer claims.[17]

### III.   THE SUBJECT PROPERTY IS NOT PROPERTY OF THE ESTATE, THEREFORE, TRUSTEE IS NOT ENTITLED TO TURNOVER.

Under Section 542 "an entity who has possession, custody, or control 'during the case' of

any property that the trustee may use, sell, or lease under § 363 or that the debtor may exempt

under § 522, 'shall deliver to the trustee, and account for, such property or the value of such

property, unless such property is of inconsequential value or benefit to the estate.'" Rupp v. Auld

(In re Auld), 561 B.R. 512, 518 (10th Cir. BAP 2017) (citing Section 542(a)).  As discussed

above, the Subject Property is not property of the bankruptcy estate.  Therefore, Trustee cannot

compel the turnover of the Subject Property under Section 542(a).  Weinman v. Graves (In re

Graves), 609 F.3d 1153, 1158 (10th Cir. 2010); Wagner v. Dreskin (In re Vaughan Co., Realtors),

11-10-10759 JA, 2015 WL 4498748 (Bankr. D.N.M. July 23, 2015); Rushton v. Hiawatha Coal

Co. (In re C.W. Mining Co.), 2010 WL 841395, at *7 (Bankr. D. Utah March 2, 2010) (citing

Headline Promotions, Inc. v. Trupiano (In re Headline Productions, Inc.), 2001 WL 1346061

(Bankr. N.D. Ill. Oct. 30, 2001)).

Accordingly, judgment will be entered in favor of Debtor and against Trustee on the

Section 542 claim.

---

[16](...continued)
was entirely consistent with Debtor's and Parents' belief Debtor (and Sister) held mere legal title
to the Subject Property after the 2003 Parents to Sisters Deed.

[17]The same analysis applies under 11 U.S.C. § 544(a) which gives Trustee strong arm
powers by giving him, as of the petition date, the status of a judicial lienholder, a creditor with an
unsatisfied execution, and a bona fide purchaser of real property.  Bakst v. Corzo (In re Corzo),
406 B.R. 154, 158 (citing Vineyard v. McKenzie (In re Quality Holstein Leasing), 752 F.2d
1009, 1012 (5th Cir. 1985)). Trustee is not a bona fide purchaser with respect to the Subject
Property based on notice.

Case: 21-01017   Doc: 40   Filed: 01/21/22   Page: 32 of 34

**IV.    THERE IS NO BASIS TO DENY DEBTOR HER DISCHARGE UNDER SECTION 727(a)(2).**

A discharge can be denied under Section 727(a)(2) if a debtor, with the intent to hinder, delay, or defraud a creditor, has transferred, removed, destroyed, mutilated, or concealed property of the debtor within a year of bankruptcy filing or property of the estate after the filing. 11 U.S.C. § 727(a)(2).  For a discharge to be denied pursuant to Section 727(a)(2), the plaintiff must establish by a preponderance of the evidence:

1.    The act complained of was done at a time subsequent to one year before the date of the filing of the petition

2.    With intent to hinder, delay or defraud a creditor or officer of the estate charged with custody of property under the Bankruptcy Code

3.    The act was that of the debtor or his duly authorized agent

4.    The act consisted of transferring, removing, destroying or concealing any of the debtor's property or permitting any of these acts to be done.

Geyer & Associates CPA's, P.C. v. Goetsch (In re Stewart), 421 B.R. 603 (10th Cir. BAP 2009). Actual intent to defraud creditors must be established.  Marine Midland Bus. Loans, Inc. v. Carey (In re Carey), 938 F.2d 1073, 1077 (10th Cir. 1991).  "Because rare is the occasion when a party lays bare his or her subjective intent, '[f]raudulent intent . . . may be established by circumstantial evidence, or by inferences drawn from a course of conduct.'"  Mathai v. Warren (In re Warren), 512 F.3d 1241 (10th Cir. 2008) (citing Farmers Coop. Ass'n of Talmage, Kan. v. Strunk, 671 F.2d 391, 395 (10th Cir. 1982)).

With respect to Trustee's Section 727(a)(2) claim, the Court is required to find Debtor had the actual intent to defraud creditors when she transferred the Subject Property to Parents. However, no evidence exists of Debtor having the actual intent, or even constructive intent, to

32

hinder, delay, or defraud creditors by the transfer of the Subject Property. The transfer of the
Subject Property was entirely consistent with Parents' and Debtor's belief Debtor (and Sister)
held only legal title to the Subject Property for estate planning purposes. As the Court finds
Debtor held only legal title to the Subject Property prior to the 2020 Sisters to Parents Deed and
the 2020 Parents to DKG Deed, all made with the eye towards protecting Parents' sole asset of
any size, the Court finds Debtor did not intend to hinder, delay, or defraud creditors when she
made such transfer. Any inference of intent to hinder, delay, or defraud creditors only arises with
respect to perhaps Parents' creditors and has no bearing on the Section 727(a)(2) claim against
Debtor.

Accordingly, judgment will be entered in favor of Debtor and against Trustee on the
Section 727(a)(2) claim.

## CONCLUSION

For the reasons set forth above, the Court concludes judgment should be entered as
follows:

1.    Judgment in favor of Trustee and against Debtor on the Section 727(a)(4) claim
      denying Debtor's discharge;

2.    Judgment in favor of Debtor and Parents and against Trustee on the claims to
      avoid as a fraudulent transfer Debtor's transfer for the Subject Property to Parents
      in 2020 (and Parents' subsequent transfer to DKG) under Sections 544, 548, and
      550;

3.    Judgment in favor of Debtor and against Trustee on the claim to turnover property
      of the estate under Section 542; and

Case: 21-01017    Doc: 40    Filed: 01/21/22    Page: 34 of 34

4.    Judgment in favor of Debtor and against Trustee on the Section 727(a)(2) claim.

A separate judgment will be entered.

IT IS SO ORDERED.

# # #